IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDNA NIENHAUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-864-NJR-CJP |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, DONALD WILLIAMS, MICHAEL WILLIAMS, RAMONA WINTERS, ROBERT WILLIAMS, DOROTHY WILKINSON, and DENNIS WILLIAMS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Edna Nienhaus filed this action on August 4, 2014, seeking review of a final determination by the Commissioner of Social Security. After Plaintiff's son died, it was determined that he had not received over $153,000 in Social Security benefits to which he was entitled. The Commissioner determined that his six adult stepchildren were entitled to receive his underpayment, but Plaintiff believes that was a mistake and the money should have gone to her.

Initially, the Commissioner was the only named defendant in this action, but Plaintiff then amended her complaint on January 22, 2015, to name her son's six stepchildren—Donald Williams, Michael Williams, Ramona Winters, Robert Williams, Dorothy Wilkinson, and Dennis Williams—as additional defendants (Docs. 1, 13). Dennis Williams was served, but Plaintiff never provided proof that the other five

stepchildren were served with process or moved for default against them (*see* Doc. 35). Plaintiff was warned twice that the case was going to be dismissed if she failed to effect service (*see* Doc. 36, 40). Plaintiff did not respond to the Court's warnings, however, so the case was dismissed (Doc. 42). Plaintiff then filed a Motion to Reconsider or in the Alternative to Reinstate, asking the Court to vacate the dismissal order and judgment and reopen this matter (Doc. 44) The Commissioner of Social Security ("the Commissioner") had no objection (*see* Doc. 45), and so the matter was reopened.

### JOINDER OF UNSERVED DEFENDANTS

Reopening this case revived the issue of how to handle the unserved Defendants: Donald Williams, Michael Williams, Robert Williams, Ramona Winters, and Dorothy Wilkinson ("the stepchildren"). The Commissioner asserts that the stepchildren are required parties under Rule 19(a)(1)(B) (Doc. 27; Doc. 45). And, while Plaintiff has been unable to serve the stepchildren, the Commissioner is not convinced that it is impossible to do so (Doc. 45). The Commissioner would like to conduct additional, limited discovery to determine the stepchildren's whereabouts and whether they are subject to service of process under Rule 4 (Doc. 45).

Plaintiff apparently does not believe that the stepchildren are required parties; she asserts that she added the stepchildren "largely as a courtesy to the Commissioner in case of an adverse ruling in order to help recoup [the Commissioner's] losses just in case she had to pay out an additional award to Plaintiff" (Doc. 44). But even if the stepchildren are required parties, Plaintiff argues that serving them with process is not feasible (Doc. 44).

It appears to the Court that Plaintiff has no problem with dismissing the stepchildren and proceeding without them. It is the Commissioner who wants them to be a part of the suit. As the party advocating for joinder of the five remaining stepchildren, the burden is on the Commissioner to show that joinder under Rule 19 is necessary. *Feuerstein v. Simpson*, 582 F. App'x 93, 99 (3d Cir. 2014); *Hood ex rel. Mississippi v. City of Memphis,* 570 F.3d 625, 628 (5th Cir. 2009); *Am. Gen. Life & Accident Ins. Co. v. Wood,* 429 F.3d 83, 92 (4th Cir. 2005).

Rule 19 "permit[s] joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 634 (7th Cir. 2009) (quoting *Moore v. Ashland Oil, Inc., 901 F.2d 1445, 1447 (7th Cir. 1990)). A Rule 19 analysis poses three successive inquiries: (1) whether the absent party is required under Rule 19(a); (2) if so, whether it is feasible to join the absent, required party; and (3) if joinder is not feasible, whether the action should proceed in equity and good conscience, or whether the absent party is indispensable such that the action should be dismissed. FED. R. CIV. P. 19(a) & (b).

To answer the first inquiry, the court must consider the criteria set forth in Rule 19(a), which provides that a person is a required party if

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(i) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a).

The Commissioner asserts that subsections (B)(i) and (B)(ii) apply here, but only in the event the Court concludes that the Commissioner erred and must pay the funds to Plaintiff (Doc. 45). Specifically, the Commissioner claims that disposition of this action in the stepchildren's absence might impair their ability to protect their interests because, if the Court concludes that Plaintiff gets the money, then the Commissioner may seek to reopen its previous decision in order to recoup the money already paid the stepchildren (Doc. 45). The Commissioner also claims she would be subjected to a "substantial risk" of double, multiple, or otherwise inconsistent obligations if the Court concludes that Plaintiff gets the money, because the funds have already been disbursed to the stepchildren (Doc. 45).

The Court understands the Commissioner's concerns, but nevertheless finds her arguments unpersuasive. If the Court were to find in Plaintiff's favor and order the Commissioner to pay Plaintiff the funds, a dispute would arise between the Commissioner and the stepchildren as to whether the stepchildren must pay back the benefits they received. As best the Court knows, it cannot resolve that dispute at this time. The Court is only authorized to review the fixed administrative record to determine if the Administrative Law Judge ("ALJ") made a mistake. The Court cannot decide whether the Commissioner is able to reopen the previous decision to pay the stepchildren or whether the stepchildren can be forced to return the money they received. Instead, any steps to reopen the previous decision and to recoup the money paid to the stepchildren must be taken at the administrative level in the first instance.

And the stepchildren will have an opportunity to object to the Commissioner's collection efforts during the administrative process. Only after the administrative process has run its course can the Court be asked to weigh in on those issues.

Therefore, the Court must conclude that while the stepchildren have an interest in this matter, and it could be impaired by the outcome of this case, the harm the stepchildren would potentially suffer—being forced to pay back the benefits they received—would not be *caused* by their absence from this case. If the Court rules in Plaintiff's favor, the Commissioner can seek to recoup the money already paid to the stepchildren regardless of whether they were present or not in this matter. Likewise, the Commissioner's potential exposure to double obligations would not be *caused* by the stepchildren's absence from this case. If the Court rules in Plaintiff's favor, the Commissioner has to pay the benefits to her; the stepchildren's presence in this matter would not do anything to change that. Joining the stepchildren appears to be a matter of convenience to the Commissioner, not a matter of necessity.

Accordingly, the Court concludes that the stepchildren are not required parties under Rule 19, and this matter can proceed without them.

ANALYSIS OF THE SUBSTANTIVE ISSUE

**1. Underlying Facts and Procedural History**

The operative facts are largely undisputed. Plaintiff's adult son, Thomas Bovinett, received Supplemental Security Income (SSI) benefits beginning in the 1970s (Tr. 14). Mr. Bovinett died in May 2008 (Tr. 69). After he died, the agency discovered that he had been insured for Disability Insurance Benefits ("DIB") and, therefore, he should have been paid at the higher DIB rate (Tr. 63). The agency determined that Mr. Bovinett was

underpaid by $153,535.32 (Tr. 15).

In May 2009, Plaintiff submitted a claim for the amount due to her late son. In that claim, she stated that Mr. Bovinett had no children or stepchildren (Tr. 66-67). The agency ultimately determined, however, that Mr. Bovinett's wife, Ethel, had six children from a prior marriage. Ethel died before Thomas Bovinett (Tr. 120). The agency further determined that the stepchildren ranked higher than Plaintiff in the order of precedence for receiving Mr. Bovinett's underpayment (Tr. 143). Consequently, the benefits were paid to the stepchildren, not Plaintiff. Plaintiff contested this determination. After holding an evidentiary hearing, ALJ William E. Kumpe denied Plaintiff's claim in a decision dated August 30, 2012 (Tr. 13-23). That decision is the final decision of the Commissioner subject to judicial review. Administrative remedies have been exhausted, and a timely complaint was filed in this Court.

## 2. Applicable Legal Standards

### a. Judicial Review

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not

reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### b. Underpayment of Benefits

Section 204 of the Social Security Act, 42 U.S.C. § 404, provides the procedure for correcting underpayment of disability benefits. Part of the statute sets forth a descending order of preference for payment of benefits due where the disabled beneficiary has died before receiving payment. 42 U.S.C. § 404(d). There are seven categories of possible payees. Persons described in categories two to seven receive the underpaid benefits only if no person in a preceding category is entitled to receive the underpayment. The pertinent regulation, 20 C.F.R. §404.503(b), mirrors the seven categories of possible payees described in the statute.

The first category is a surviving spouse who "either (i) was living in the same household with the deceased at the time of his death or (ii) was, for the month in which the deceased individual died, entitled to a monthly benefit on the basis of the same wages and self-employment income as was the deceased individual." § 404(d)(1).

The second and third categories, respectively, are the surviving child(ren) and the parent(s) of the deceased beneficiary "who were, for the month in which the deceased individual died, entitled to monthly benefits on the basis of the same wages and self-employment income as was the deceased individual." 42 U.S.C. §§ 404(d)(2), (3). In

other words, in order to be entitled to monthly benefits on the deceased beneficiary's wages, these individuals would have to show, among other requirements, that he or she was dependent on the deceased beneficiary for support. *See* 42 U.S.C. §§ 402(d) & (h).

The fourth category is a surviving spouse who does not meet the requirements of category one. 42 U.S.C. § 404(d)(4). The fifth category is a surviving child or children who do not meet the requirements of category two. 42 U.S.C. § 404(d)(5). The sixth category is a surviving parent or parents who do not meet the requirements of category three. 42 U.S.C. § 404(d)(6). The seventh and final category is the deceased beneficiary's estate. 42 U.S.C. § 404(d)(7). If there is no surviving spouse, children, or parents, the benefits are paid to the legal representative of the estate. *Id.*

In this case, there is no surviving spouse, so the first and fourth categories of the statutory order of preference are inapplicable. The decision came down to whether his mother or the adult children of Mr. Bovinett's deceased wife were entitled to his underpaid benefits.

Neither the statute nor the regulation defines "child" or "stepchild." *See* 42 U.S.C. § 404 and 20 C.F.R. § 404.503. Elsewhere within the same chapter of the Social Security Act, however, "child" is defined as "(1) the child or legally adopted child of an individual, (2) a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed or (if the insured individual is deceased) not less than nine months immediately preceding the day on which such individual died . . . ." 42 U.S.C. §416(e). The term "stepchild" is not further defined in that subchapter. *See* 42 U.S.C. §416(e).

3.  **The Decision of the ALJ**

ALJ William E. Kumpe found that Thomas Bovinett was disabled and received SSI payments beginning in the 1970s. He also found that the agency determined after Mr. Bovinett's death that he had been insured for DIB at the time he became disabled, and that he had been underpaid by $153,535.32 because he was paid at the lower SSI rate.

Relying on the language of 42 U.S.C. §404(d) and 20 C.F.R. §404.503(b), as well as SSR 70-3 and a section of the agency's procedure manual ("POMS"), the ALJ concluded that the six stepchildren did not lose their status as stepchildren on the death of their mother or of Mr. Bovinett, and that they were higher than Plaintiff in the order of priority for payment. He specifically rejected Plaintiff's argument that the stepchildren were not higher than Plaintiff because they were not dependent on Mr. Bovinett for support. He also rejected her argument that the money should be paid to her as a "matter of humanitarianism."

4.  **Issues Raised by Plaintiff**

In her brief (Doc. 18), Plaintiff raises the following issues:

- There is a conflict in the Social Security Act and in the relevant regulations because "stepchild" is defined in two different ways.

- Payment of the money owed to the adult stepchildren is inequitable because the stepchildren were adults when their mother married Mr. Bovinett, they were not dependent on Mr. Bovinett for support, and Plaintiff provided support to Mr. Bovinett and "watched over" him and his wife until their deaths.

5.  **Analysis**

Plaintiff's brief is only two pages long and her arguments are bare-bones, to say

the least (*see* Doc. 18). There is no dispute that the stepchildren do not fall into category two because they were not entitled to benefits on Mr. Bovinett's earnings record in the month of his death (*see* Doc. 18; Doc. 27, p. 3). And Plaintiff does not argue that she fits within category three; that is, she does not argue that she is a surviving parent who was dependent on her son for support (*see* Doc. 18). To fall within this category, she must show that she was entitled to "monthly benefits on the basis of the same wages and self-employment income as was the deceased individual" because, among other things, she "was receiving at least one-half of his support from such individual at the time of such individual's death or, if such individual had a period of disability which did not end prior to the month in which he died, at the time such period began or at the time of such death." 42 U.S.C. §§ 404(d)(3), 402(h)(B)(i). Plaintiff does not claim that she was receiving support from her late son; in fact, she claims the exact opposite, that she provided support to her son and his wife (*See* Doc. 18, p. 2). Thus, in order to be entitled to the underpayment, Plaintiff had to establish that the stepchildren do not meet the requirement of the fifth category, which only requires that they be children of Mr. Bovinett. Plaintiff did not argue that the stepchildren fail to meet that definition (*see* Doc. 18).

Instead, Plaintiff argues that there is a "contradiction" in the regulations because a child must be dependent on the deceased to be entitled to the underpayment in one section, but not in another (Doc. 18). The significance of this observation is not clear. As explained above, the applicable regulation mirrors the statute. Both the statute and the regulation provide that children of the deceased rank second in order of priority if they

were "entitled to a monthly benefit on the basis of the same earnings record as was the deceased individual for the month in which such individual died," and they rank fifth if they were not so entitled. 42 U.S.C. § 404(d) and 20 C.F.R. § 404.503(b). Surviving parents rank third if they were "entitled to a monthly benefit on the basis of the same earnings record as was the deceased individual for the month in which such individual died," and sixth if they were not so entitled. 42 U.S.C. § 404(d) and 20 C.F.R. § 404.503(b). The practical effect is that survivors who were dependent on the deceased for support rank higher in priority than survivors who were not. Therefore, contrary to Plaintiff's assertion, there is no contradiction in the regulation that would somehow invalidate the distribution scheme.

Plaintiff next argues that payment to the adult stepchildren is inequitable (Doc. 18). Specifically, Plaintiff argues that the stepchildren reached adulthood years before their mother married Mr. Bovinett (*Id.*). She claims that the stepchildren "were nowhere to be found and provided no support" to their mother or Mr. Bovinett prior to their deaths (*Id.*). Instead, it was Plaintiff who "supported the deceased couple, paid their funeral expenses, and watched over them until their deaths" (*Id.*). Plaintiff argues that paying the stepchildren the underpaid benefits is an unfair and inequitable windfall for them (*Id.*).

The Court certainly understands Plaintiff's point of view. However, the statute does not give the Commissioner the authority to disregard the order of priority set by Congress based on equitable concerns. Section 404(d) directs that "If an individual dies before any payment due him under this subchapter is completed, payment of the

amount due (including the amount of any unnegotiated checks) *shall* be made" according to the order of priority set forth in subsections (1) through (7). 42 U.S.C. § 404(d) (emphasis added). The word "shall" in the statute indicates that the Commissioner has no discretion to designate a payee based on equitable concerns. *See Kingdomware Technologies., Inc. v. United States*, No. 14-916, ---S. Ct. ---, 2016 WL 3317563, at *6 (U.S. June 16, 2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.") Plaintiff has not cited to any case from any jurisdiction that holds otherwise (*see* Doc. 18). The Court likewise has not found such a case in the course of its own independent research. In view of the clear wording of the statute, the Court must conclude that the Commissioner has no such discretion.

Plaintiff also points out that the stepchildren were adults at the time of Mr. Bovinett's death. Again, the significance of this fact is unclear. 42 U.S.C. §404(d) does not require that the children of the deceased be minors at the time of death. Further, 42 U.S.C. §416(e), which defines "child" for purposes of 42 U.S.C. Chapter 7, subchapter II, does not include an age requirement.

Plaintiff does not argue that the stepchildren lost their status as stepchildren upon Mr. Bovinett's death (*see* Doc. 18). In fact, SSR 70-3, which the ALJ was required to follow, provides just the opposite. "While [SSRs] do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs 'binding on all components of the Social Security Administration.'" *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999) (citing 20 C.F.R. 402.35(b)(1)).

In short, Plaintiff has not demonstrated that ALJ Kumpe erred in finding that the stepchildren were entitled to the underpayment because they ranked above Plaintiff in the order of priority set by Congress in 42 U.S.C. § 404(d). The ALJ's decision was a straightforward application of that statute, and Plaintiff has not demonstrated that the ALJ had the legal authority to disregard the order of priority set by Congress because of equitable concerns.

## CONCLUSION

After careful review of the record as a whole, the Court finds that Plaintiff has not identified any error of law committed by the ALJ and has not demonstrated that the ALJ's decision lacked substantial support. Accordingly, the final decision of the Commissioner of Social Security finding that the stepchildren (Donald Williams, Michael Williams, Ramona Winters, Robert Williams, Dorothy Wilkinson, and Dennis Williams) were entitled to the underpayment of benefits at issue is **AFFIRMED**.

Defendants Donald Williams, Michael Williams, Ramona Winters, Robert Williams, and Dorothy Wilkinson are dismissed without prejudice.

The Clerk of Court shall enter judgment in favor of Defendants Carolyn W. Colvin, Acting Commissioner of Social Security, and Dennis Williams.

**IT IS SO ORDERED.**

**DATED:** June 23, 2016

**NANCY J. ROSENSTENGEL**
**United States District Judge**